ILLINOIS CENTRAL RAILROAD COMPANY *v.* H. B. GREAVES.

1. RAILROADS.   *Live stock on track.   Duty of employes.*

It is not the duty of the servants of a railroad company in charge of a rapidly moving train to drive live stock from the track when it is not possible to do so.

2. EVIDENCE.   *Common knowledge.   Matters not within.*

Matters within the common knowledge of mankind do not require proof; but this rule does not dispense with the necessity of evidence to show the following facts:

(*a*) The grade of a railroad track at a certain place;

(*b*) That a horse can be seen at night more than one hundred and fifty feet by the engineer of a locomotive running at the rate of fifty miles an hour;

(*c*) That a horse, when given one hundred and fifty feet the start, can run ahead of a rapidly moving railroad train for a short distance, and thereby escape injury if those in charge use all proper efforts to stop the train; and,

(*d*) That the speed of a train running at the rate of fifty miles an hour may be so decreased as to permit the escape of a horse seen one hundred and fifty feet in front of the engine.

FROM the circuit court of Madison county.

HON. W. H. POWELL, Special Judge.

This was a suit by appellee, Greaves, against the railroad company for the value of two horses killed on the track by the cars. The suit was begun before a justice of the peace, who decided the case in favor of defendant.   The plaintiff, Greaves, appealed to the circuit court, and on the trial therein made out a *prima facie* case under the statute, code 1892, § 1808, which provides that proof of injury inflicted by the running of the locomotive or cars of a railroad company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury, but offered no evidence showing the actual occurrences at the time of the acci-

dent. The defendant showed by the testimony of the engineer that the accident, which occurred at night, was unavoidable; that the train, all of its appliances being in proper order, was running at the rate of fifty miles an hour down a slight grade, when the horses were seen about one hundred and fifty feet in front of the engine; that everything was done by the servants of the company to prevent the injury which could have been done. The plaintiff offered evidence in rebuttal, showing, or tending to show, that the grade, at the place of the accident, was an up grade in the direction the train was moving.

The instruction for the plaintiff first appearing in the record, numbered 3, referred to in the opinion of the court, is in these words: "3. The right of the railroad company to the free, exclusive and unmolested use of its railroad, is nothing more than the right of every other land proprietor in the actual occupation and use of his land, and does not exempt it from the duty enjoined by law upon every person, so to use his own property as not to do an unnecessary and avoidable injury to another. Finding the animal upon the track, it was right and the duty of the agents of the company to drive it off, but not to injure or destroy it by unnecessary violence."

The succeeding instruction for the plaintiff, also numbered 3, referred to by the court, is as follows: "3. The court instructs the jury that matters within the common knowledge of men need not be proved by witnesses, and the jury, in considering this case, may use such common knowledge in making up their verdict."

The verdict and judgment of the circuit court was in favor of the plaintiff, and defendant appealed.

*J. B. Chrisman* and *Mayes & Harris*, for appellant.

The testimony of engineer Lilly, the only eyewitness of the accident, was allowed to be consistent and reasonable, and exculpated the defendant from the slightest shadow of negligence. The witness was not impeached or contradicted in the slightest

material particular. The only conflict between the plaintiff's evidence and the testimony of the engineer was as to the grade of the road where the animals were killed, which could cut no figure where a train was running fifty miles an hour in the dark, and the animals could not be discerned beyond one hundred and fifty feet from the engine.

The jury were controlled by their understanding of the instructions for the plaintiff, which seem to advise them that they were not compelled to be governed by the evidence, but might act upon what the charge, No. 3 for plaintiff, called "common knowledge" in making up their verdict. The other instruction, also numbered 3 for plaintiff, is susceptible of the construction that, when an animal is found on the track, the train must not be running so fast that the engineer cannot stop the train and get out of his cab, after seeing the animal, and drive it off the railroad track. This the instruction holds is the right thing for the defendant's agents to do, and it is the duty of the company's servants not to neglect to do it.

*H. B. Greaves, in propria persona,* for appellee.

The judgment must be affirmed unless the court below could have rightfully given a peremptory instruction for the railroad company. This could not have been done. *Scott* v. *Railroad Co.*, 72 Miss., 37; *Bedford* v. *Railroad Co.*, 65 Miss., 385; *Holmes* v. *Simon*, 71 Miss., 245; *Railroad Co.* v. *Boehms*, 70 Miss., 11. Common knowledge teaches us that a young horse can for a short space of time keep ahead of a moving train, even at the rate the particular train is said to have been moving. There is a conflict of evidence as to whether the grade of the roadbed was an up or a down grade, and the engineer being contradicted on this material point, the jury was not compelled to accept his statements on other points.

WOODS, C. J., delivered the opinion of the court.

The third instruction for the plaintiff was inapplicable to the developed facts of the case, and was erroneous. Under the

circumstances attendant upon the killing of the horses, as shown by the evidence, it was not the duty of the agents of the company to drive the animals from the track—a feat palpably impossible of accomplishment. In proper cases, where the facts proven show that the danger was seen in time to have avoided doing injury, if reasonable skill and care had been exercised by the railroad's servants operating and controlling the train, the charge would be correct; but it was wholly erroneous, and doubtless misleading with the jury, in this case, where the uncontroverted evidence is that the train was running about fifty miles an hour, on a dark night, and the animals only seen about one hundred and fifty feet in front of the locomotive by the engineer, who was on his seat and on the lookout for obstructions on the track. With this incorrect charge before it, the jury must have felt constrained to find against the railroad.

The succeeding instruction, also numbered 3 in the transcript, was likewise erroneous. It is true that matters within the common knowledge of mankind do not require proof; but what matters of that character were found in the case as made? What matters of common knowledge were there in this case which called for this instruction? Surely it was not intended thereby to authorize the jury to themselves discredit the evidence of Lilly, the engineer, by saying, one to another, that it is a matter of common knowledge that there is an up grade where the injury was done; that it is a matter of common knowledge that a horse can be seen more than one hundred and fifty feet away by one on a train running fifty miles an hour, and on a dark night, and that it is, also, matter of common knowledge that, under such conditions, the animals could have outrun the train for a short time, and would have escaped if all proper efforts had been made to stop the train, and that a train running as this particular one unquestionably was might have been slowed down enough to permit the escape of the horses. None of these matters are to be assumed as of common knowledge, and without evidence. If there was any matter of

common knowledge which the jury was called upon to consider in the determination of the case, the attention of the jury should have been called thereto; but no such matter has been discovered by us, nor has counsel who drew the charge assisted us by pointing it out to us. We fear this charge so far misled the jury as that the evidence was disrégarded and the issue determined by common knowledge.

*Reversed and remanded*